# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Janet Louise Nelums,<br><br>                                               Debtor(s). | C/A No. 18-05885-JW<br><br>Adv. Pro. No. 19-80032-JW<br><br>Chapter 13 |
| Janet Louise Nelums,<br><br>                                               Plaintiff(s),<br><br>v.<br><br>Specialized Loan Servicing, LLC; Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B, Home Equity Mortgage Loan Asset Backed Certificates, Series SPMD 2002-B;<br><br>                                               Defendant(s). | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

This matter comes before the Court on cross-motions for summary judgment filed by Janet Louise Nelums ("Plaintiff") and Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B ("SLS").[1] A hearing was held on the cross-motions for summary judgment. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[2]

---

[1] For the purposes of this Order, the Court will refer to Specialized Loan Servicing, LLC as "SLS" and Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B as "Deutsche Bank as Trustee." **Unless indicated otherwise, all references to SLS shall be in its capacity as servicing agent for Deutsche Bank as Trustee.**

[2] To the extent the following findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

## *UNDISPUTED FACTS*

The present matter centers on whether SLS is a creditor of Plaintiff and a lienholder on Plaintiff's residence. At the hearing on the cross-motions for summary judgment, all parties agreed that there was no dispute of material fact and that the Court could dispose of all the issues raised in the adversary proceeding at the summary judgment stage. The Court finds the following undisputed facts are relevant and material to this matter:

1. On August 6, 2002, Plaintiff executed and gave a note in the amount of $112,000 to IndyMac Bank, F.S.B. ("Note").

2. Also on August 6, 2002, to secure the Note, Plaintiff and her husband, Christopher Nelums, executed and delivered a mortgage to IndyMac Bank, F.S.B. ("Mortgage") as to the property known as 813 N. Highland Forest Drive, Columbia, South Carolina ("Residence").

3. On May 21, 2004, an assignment of the Mortgage ("Assignment") was recorded in the public records for Richland County, South Carolina, which stated that IndyMac Bank, F.S.B. assigned "all our rights, title and interest in and to" the Mortgage and related Note to Deutsche Bank National Trust Company as Trustee under the Pooling and Servicing Agreement Series 2002-B.

4. On November 19, 2018, Plaintiff filed a petition for relief under chapter 13 of the Bankruptcy Code, which was designated as C/A No. 18-05885-jw ("Main Bankruptcy Case").

5. On December 17, 2018, in the Main Bankruptcy Case, Plaintiff proposed a chapter 13 plan that asserted that neither SLS nor Deutsche Bank as Trustee are the holder of the Mortgage. The plan provided that Plaintiff would pay a post-petition monthly amount (in

2

the amount that SLS asserts is the monthly mortgage payment) to the Chapter 13 Trustee and that, the Trustee is to pay those payments upon confirmation if the Court determines that SLS or Deutsche Bank as Trustee is the proper lienholder and has an allowed secured claim. The proposed plan does not provide for treatment of any pre-petition arrearage that may be owed under the loan.

6.      On January 14, 2019, SLS filed in the Main Bankruptcy Case an objection to confirmation of Plaintiff's proposed chapter 13 plan, alleging that it does not comply with 11 U.S.C. § 1322(a)(5) and does not provide a cure of Plaintiff's pre-petition arrearage.

7.      On January 25, 2019, Deutsche Bank as Trustee through SLS filed a proof of claim stating a total debt amount of $218,479.21 with an amount necessary to cure the pre-petition default of $121,753.45.[3] The proof of claim included a copy of the original indorsed Note, the Mortgage, and the Assignment.

8.      On January 30, 2019, Plaintiff filed in the Main Bankruptcy Case an objection to the claim filed by Deutsche Bank as Trustee through SLS. Plaintiff's objection to claim asserts that the Note and Mortgage were split upon the securitization of the loan, which causes neither Deutsche Bank as Trustee nor SLS to be the holder of the Note and Mortgage. However, Plaintiff did not dispute that the claim was filed in compliance with Fed. R. Bankr. P. 3001 or dispute the amounts stated as being due in the claim.

9.      At the hearing on Plaintiff's objection to claim, the Court determined, and the parties agreed, that the relief sought by Plaintiff regarding the Note and Mortgage must be brought as an adversary proceeding pursuant to Fed. R. Bankr. P. 3007(b) and provided

---

[3]     The proof of claim indicates that Plaintiff is contractually due for the August 1, 2010 payment. Plaintiff did not dispute that she has not made a payment on the loan in nearly ten years.

3

Plaintiff with thirty days to commence an adversary proceeding. All parties agreed that the objection to confirmation filed by SLS and Plaintiff's objection to claim would be fully determined by the findings and conclusions reached in this adversary proceeding. As the outcome of the adversary proceeding would control the determination of the parties' objections, both objections remain pending in Plaintiff's Main Bankruptcy Case while the Court considers the present adversary proceeding.

10. On May 3, 2019, Plaintiff commenced the present adversary proceeding.

11. After SLS filed an answer to Plaintiff's complaint, the parties were provided 155 days to conduct discovery.

12. On November 12, 2019, Plaintiff filed a Motion for Summary Judgment.

13. On November 26, 2019, the parties entered a consent Pre-Trial Order, which extended the time for the parties to complete discovery and to file motions for summary judgment.

14. On January 31, 2020, SLS filed its Motion for Summary Judgment and Plaintiff filed an Amended Motion for Summary Judgment.

15. At the hearing on the cross motions for summary judgment, counsel for SLS demonstrated her possession of the original Note, which contained a blank indorsement from IndyMac Bank, F.S.B.[4]

---

[4] On the eve of the hearing on the cross-motions for summary judgment, SLS filed an affidavit of Shane Ellis, an Assistant Vice President of SLS, to authenticate the Note and Mortgage. Plaintiff filed a motion to exclude the affidavit on the grounds that it was untimely and prejudicial. The Court's second amended scheduling order entered on November 26, 2019, which was consented to by counsel for both parties, provides that "[a]n opposing affidavit [pursuant to Fed.R. Civ. P. 56(c)] may be filed at any time prior to the day of the hearing." Therefore, based on the deadline set forth in the Court's order, the affidavit was timely filed.

Regardless of this affidavit and motion to exclude, Plaintiff agreed at the hearing that the signature on the Note appeared to be hers but that she has no personal knowledge of the indorsement included on the Note. SLS has asserted that it is the holder of the Note, indorsed in blank, since prior to the filing of this adversary proceeding. Plaintiff has not raised any allegations regarding the authenticity of the indorsement and, after

16. Also at the hearing, SLS withdrew the counterclaims asserted against Plaintiff.

## CONCLUSIONS OF LAW

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment phase, "[t]he pertinent inquiry is whether 'there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.*"* *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party makes a summary judgment motion, the burden is on the nonmoving party to demonstrate there is a genuine issue of material fact for trial. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). The evidence presented must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has explained that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

---

completing discovery, has presented no facts to dispute that SLS is the holder of the original Note, indorsed in blank.

Important to this ruling, the parties in this matter stipulated on the record at the hearing and agreed that no genuine issue of material fact exists, and therefore, the Court should grant one of the motions for summary judgment as a matter of law.[5]

### "Creditor" under the Bankruptcy Code

Plaintiff seeks a declaratory judgment that neither SLS nor Deutsche Bank as Trustee are creditors of Plaintiff and do not hold a lien interest in Plaintiff's Residence.

A "creditor" is defined for purposes of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10)(A) (2020). The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5)(A) (2020). Therefore, the critical issue in this matter is whether SLS has a "right to payment" against Plaintiff.

### Right to Payment under Article 3 of the South Carolina Commercial Code

The claim filed by SLS is based upon the Note and Mortgage Plaintiff executed in 2002. Under South Carolina law, a mortgage note is considered a negotiable instrument under Article 3 of the South Carolina Commercial Code (S.C. Code Ann. § 36-3-101, *et al.*).[6] *See*

---

[5] This stipulation waived any right to assert a remaining genuine issue of material fact as a defense to either summary judgment motion.

[6] The parties did not address the choice of law in this matter. Based on the record and the language of the Mortgage, it appears to the Court that South Carolina law applies to this matter.

Further, the parties did not address which version of the South Carolina Commercial Code applies—the version in effect when the note was executed in 2002 or the present version of the Code. In 2008, the South Carolina Legislature significantly revised the S.C. Commercial Code, which provided that the controlling version of the Commercial Code is dependent on when the relevant "transaction" occurred. In the present matter, the Court would reach the same conclusion (that SLS as the holder of the note, indorsed in blank has a right to payment from Plaintiff) under both the present version of the S.C. Commercial Code or the version in effect in 2002. The Court has observed that, in recent opinions, the Court of Appeals for South Carolina has applied the revised version of the Commercial Code to loans which were executed prior to the revision. *See, e.g., Bank of Am., N.A. v. Draper*, 746 S.E.2d 478, 479 (S.C. Ct. App. 2013) (applying the revised commercial code to a note

6

*Swindler v. Swindler*, 584 S.E.2d 438, 440–41 (S.C. Ct. App. 2003) (finding that Article 3 governs a note secured by a mortgage on real property). Under the South Carolina Commercial Code, payment under a negotiable instrument is to be made to a "person entitled to enforce the instrument" under § 36-3-301. *See* S.C. Code Ann. § 36-3-602(a) (2020) ("[A]n instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument, and to a person entitled to enforce the instrument."). Section 36-3-301 of the South Carolina Code provides that "person entitled to enforce" a negotiable instrument includes "the holder of the instrument . . . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* at § 36-3-301. The South Carolina Commercial Code defines a holder as "a person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession . . ." *Id.* at § 36-1-201(21). Therefore, under South Carolina law, a party in possession of an original note that either is bearer paper or specifically indorsed to that party has a right to payment under the note.

In the present matter, the undisputed facts indicate that SLS is in possession of the original Note. Counsel for SLS displayed that document, along with the original Mortgage and mortgage Assignment, at the hearing on the cross-motions for summary judgment, and

---

executed in 2005); *Wilmington Savings Fund Society v. Furmanchik*, C/A No. 2015-UP-353, slip op., 2015 WL 4275455 (S.C. Ct. App. July 15, 2015) (applying the revised Commercial Code to a loan executed in 2006).

Therefore, for the purposes of this Order, the Court will address the matter under the present version of the S.C. Commercial Code with the understanding that the result would be the same under the prior version of the Code in effect in 2002. *See* S.C. Code Ann. § 36-1-201(20) (2002) ("'Holder' means a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank."); § 36-3-204(b) (2002) ("An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by deliver alone until specially indorsed."); and § 36-3-301 (2002) ("The holder of an instrument whether or not he is the owner may transfer or negotiate it and . . . enforce payment in his own name.").

7

copies were attached to the proof of claim filed in this case as well as motion for summary judgment filed by SLS. The Note, which was originally given to IndyMac Bank, F.S.B. contains an original indorsement in blank, executed by IndyMac Bank, F.S.B. Plaintiff's pleadings do not dispute the authenticity of the indorsement included on the Note. Under S.C. Code Ann. § 36-3-205, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specifically indorsed."

While Plaintiff has raised arguments that SLS failed to provide the documentation demonstrating its purchase of the mortgage loan or its inclusion in a Mortgage Loan Purchase Agreement, such documentation is not required to transfer and negotiate the right to payment of a bearer instrument under the South Carolina Code.[7] Possession alone is sufficient to demonstrate the negotiation of such an instrument. *See* S.C. Code Ann. § 36-3-205 (2020).

Further, under South Carolina law, it is well-established that a servicer, which is a party that collects a debt on behalf of another party, has standing and is a real party in interest to commence a foreclosure action and file a proof of claim in a bankruptcy case. *See In re Woodberry*, 383 B.R. 373 (Bankr. D.S.C. 2008); *In re Neals*, 459 B.R. 612 (Bankr. D.S.C. 2011); *Bank of America, N.A. v. Draper*, 746 S.E.2d 478 (S.C. Ct. App. 2013).

For these reasons, the Court finds based on the undisputed facts that SLS is the party in possession of the original Note that is indorsed in blank, and therefore the Note's holder. Further, SLS acts in this case as the servicer for Deutsche Bank as Trustee. As the Note's holder, SLS is a party entitled to enforce it under the South Carolina Commercial Code and

---

[7] Plaintiff asserts that a party must be the holder in due course to be able to enforce a negotiable instrument; however, section 36-3-301 of the South Carolina Code does not contain this requirement. Under S.C. Code Ann. 36-3-305, a holder in due course is subject to fewer defenses as result of its status, but that status is not a requirement to the enforceability of an instrument. Therefore, the Court finds Plaintiff's arguments to be unpersuasive.

has the current right to payment from Plaintiff under the Note. Therefore, SLS is a "creditor" of Plaintiff as defined by the Bankruptcy Code.

**Mortgage Follows the Note in South Carolina**

As a matter of South Carolina law, the transfer of a note also carries with it the transfer of the related mortgage, regardless of whether an assignment of mortgage has been executed and filed in the public records. The Fourth Circuit Court of Appeals has held:

> South Carolina has long upheld "the familiar and uncontroverted proposition ... that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage, but that the assignment of the mortgage alone does not carry with it an assignment of the note." *Hahn v. Smith,* 157 S.C. 157, 154 S.E. 112, 115 (1930); *see also Ballou v. Young,* 42 S.C. 170, 20 S.E. 84, 85 (1894) ("The transfer of a note carries with it a mortgage given to secure payment of such note."). Thus, because [defendant] is the holder of the note, it is also the holder of the mortgage.

*Scheider v. Deutsche Bank Nat. Tr. Co.*, 572 F. App'x 185, 190 (4th Cir. 2014). Also in *Scheider*, the Fourth Circuit rejected the arguments of the plaintiff in that matter that this "longstanding rule is unsuited to the complex securitization of mortgage so prevalent today[,]" finding that "South Carolina has [not] revisited its law on negotiable instruments—especially as its higher courts continue to apply [the rule that a mortgage follows the note]." *Id.* at 190-91.

While Plaintiff in this action has alleged that the securitization of the mortgage loan has "split" the Note from its related Mortgage, courts applying South Carolina law have routinely rejected that the mortgage may be split from its note. *See id.* at 190 ("If we permitted the split-the-note theory that [plaintiffs] propose, 'there would be little reason for notes to exist in the first place,' as '[o]ne of the defining features of notes is their transferability.' The idea that 'transferring a note would strip it from the security that gives it value and render the note largely worthless . . . cannot be—and is not—the law.") (quoting *Horvath v. Bank of*

9

*New York N.A.*, 641 F.3d 617, 624 (4th Cir 2011)); *Bruce v. Wilmington Savings Fund Society, FSB, Trustee of Stanwich Mortgage Loan Trust*, C/A No. 2:18-2555:BHH-BM, 2019 WL 1293718 (D.S.C. Jan. 15, 2019) (rejecting plaintiff's attempts "to assert a 'split the note' argument, [which claimed] that in order to have standing in a foreclosure case a plaintiff in a state court action must have acquired the mortgage"); *Cooper v. Van Slambrook*, C/A No. 2:19-649-DCN-BM, 2019 WL 3777153 (D.S.C. June 4, 2019) (same); *Wyman v. Chellis*, C/A No. 2:17-2946-RMG-BM, 2018 WL 1801644 (D.S.C. Jan. 30, 2018) (same).

Further, in the present matter, Plaintiff's arguments are also defeated because the record also contains a 2004 assignment of the mortgage, which assigns the Mortgage from Indymac Bank, F.S.B., the original mortgagee, to Deutsche Bank as Trustee, the entity for which SLS is servicing the debt.

Because South Carolina law provides that holder of the note is also the holder of the mortgage, SLS, as the holder of the Note, is also entitled to enforce the Mortgage on behalf of Deutsche Bank as Trustee.

While these findings and conclusions are dispositive of the motions for summary judgment before the Court and therefore, may conclude this adversary proceeding,[8] the Court will nevertheless address Plaintiff's assertions in her motion for summary judgment.

---

[8] SLS also argued that Plaintiff was barred from challenging its status as a note holder based on a prior order of the state court. However, while a copy of certain portions of this order was included with its motion for summary judgment, it appears counsel for SLS inadvertently omitted the page including the alleged relevant findings of the state court. At the hearing, counsel for SLS asked the Court to take judicial notice of the state court's order as a result of her error. As the Court finds the actions of counsel for SLS were not intentional and because the state court's order is not subject to a reasonable dispute since it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, the Court takes judicial notice of the state court order pursuant to Fed. R. Evid. 201. Ultimately, the Court reaches its determination of summary judgment without the need to consider the state court's order at this time.

*Plaintiff's Arguments*

Plaintiff asserts a number of arguments regarding the status of SLS as a creditor and lienholder. Plaintiff's only evidence submitted in support of her summary judgment motion is the affidavit and declaration of her purported expert, Cyndee Rae Estrada.[9] At the summary judgment stage, the information contained in an affidavit or declaration must be admissible into evidence at trial. *See* Fed. R. Civ. P. 56(c)(4). The admissibility of expert testimony is governed by Fed. R. Evid. 702.[10] The Fourth Circuit Court of Appeals has provided the following guidance regarding the admission of expert testimony:

> Ultimately, an expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (internal quotation marks omitted). The district court's role in considering the admissibility of expert testimony is that of a "gate-keeper," whose prime task is to assess the reliability and relevancy of the proffered evidence. *See id.* at 1174. . . .
>
> As the gate-keeper, the district court must remember that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both powerful and quite misleading." *Daubert,* 509 at 595 (internal quotation marks omitted).

---

[9] Ms. Estrada's affidavit and declaration included multiple attachments:

- A Form 8-k filed with the S.E.C. on November 18, 2002 by Deutsche Bank as Trustee
- A Form T-1 filed with the S.E.C. on July 25, 2018 by Deutsche Bank National Trust Company
- An internal memorandum from Deutsche Bank as Trustee to holders of mortgage-backed securities dated October 25, 2010
- An internal memorandum from Deutsche Bank as Trustee to loan servicers dated October 8, 2010
- An internal memorandum from Deutsche Bank as Trustee to loan servicers dated July 28, 2008
- An internal memorandum from Deutsche Bank as Trustee to loan servicers dated August 30, 2007

These documents were not authenticated, and a foundation was not created through the affidavit and declaration and some may be inadmissible at trial if Ms. Estrada is not qualified as an expert by the Court.

[10] Fed. R. Evid. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise."

11

*Higginbotham v. KCS Int'l, Inc.*, 85 F. App'x 911, 914 (4th Cir. 2004).

SLS moved to exclude Ms. Estrada's affidavit on several grounds. SLS asserted that Ms. Estrada is not qualified to serve as an expert in this matter and that the affidavit amounts to an improper statement of legal conclusions.

SLS first calls the Court's attention to the fact that Ms. Estrada asserts that she is a "forensic loan auditor" and that she should not be recognized as an expert. The legitimacy of expertise in such a field has been questioned by other courts. For example, the U.S. District Court for the Northern District of Georgia has stated the following regarding "forensic loan auditors:"

> [The purported expert's] affidavit recasts the same arguments repeatedly made by owners in an attempt to forestall foreclosure. It is replete with erroneous statements of law and wholly unhelpful to a resolution of the case. It is not surprising, therefore, that numerous consumer protection agencies, as well as state Attorneys General and the Federal Trade Commission have issued consumer alerts warning homeowners not to fall prey to the scam of "forensic loan auditors."

*Cummings v. Mortg. Elec. Registration Sys., Inc.*, No. 1:13-CV-3302-TWT, 2014 WL 3767797, at *5 (N.D. Ga. July 30, 2014); *see also Hakimi v. Bank of New York Mellon*, No. 2:14-CV-2215 JCM CWH, 2015 WL 2097872, at *4 (D. Nev. May 5, 2015) ("The Federal Trade Commission describes so-called "forensic loan audits" as a technique used by '[f]raudulent foreclosure 'rescue' professionals [who] use half-truths and outright lies to sell services that promise relief to homeowners in distress.' ") (quoting The Federal Trade Commission, *Forensic Loan Audits,* FTC Consumer information (Mar.2010), https://www.consumer.ftc.gov/articles/0130–forensic–loan–audits). While Plaintiff takes exception to SLS's accusation that Ms. Estrada is participating in a fraud, the Court nevertheless declines to qualify her as an expert in this matter and finds that her report is

12

wholly unhelpful to the resolution of the case and that it is not admissible expert testimony under Fed. R. Evid. 702 for the reasons stated herein.[11]

First, the reliability of a similar report by Ms. Estrada herself has been significantly doubted by another court in a similar circumstance. Specifically, in a case where Ms. Estrada was retained to serve as an expert witness for plaintiffs who sought to invalidate their mortgage note, the U.S. District Court for the District of Arizona found that the report of Ms. Estrada was of questionable reliability, "belied by the overwhelming documentary evidence," and "belied by simple common sense." *Rich v. BAC Home Loans Servicing LP*, C/A No. 11-00511-PHX-DLR, slip op. 2014 WL 7671615 (D. Ariz. Oct. 9, 2014) aff'd 666 F. App'x 635 (9th Cir. 2016).

Second, in reviewing the declaration and affidavit, Ms. Estrada's affidavit primarily amounts to legal arguments as to the correct interpretation of the applicable law, much of which has been repeated by Plaintiff in her pleadings. "[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (determining whether the opinion testimony of a physician-expert constituted an impermissible legal conclusions). Generally, the Fourth Circuit identifies "improper legal conclusions by determining whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *Id.* In the present matter, Ms. Estrada cites to numerous statutes, and regulations and uses legal terms of art to assert an ultimate conclusion that SLS or Deutsche Bank as Trustee cannot be a "holder" of the Note and could not be a "creditor"

---

[11] While the curriculum vitae that Ms. Estrada attached to her declaration included a listing of several cases in which she indicates she was "acknowledged" as an expert by the court, based upon a review of several of the federal cases listed, it does not appear that she was in fact qualified as an expert under Fed. R. Evid. 702 by those courts.

13

of Plaintiff. In short, Ms. Estrada's affidavit and declaration were more akin to a legal brief filed by counsel than a report by an expert. Even at the hearing, counsel for the Plaintiff referred the Court to Ms. Estrada's affidavit for a summary of the Plaintiff's positions. Such arguments of law by an alleged expert witness would not be admissible at trial and are not permitted in an affidavit submitted in support of summary judgment.

Third, as discussed more fully below, Ms. Estrada's declaration and affidavit contain incorrect legal conclusions under South Carolina law and focus on trivial and immaterial issues in the matter before the Court.[12] In short, the affidavit and declaration are unhelpful to the resolution of this adversary proceeding.

For these reasons, the Court grants SLS's motion to exclude the affidavit of Ms. Estrada on the basis that the Court finds that the Plaintiff has not satisfied her burden of showing that Ms. Estrada is qualified to serve as an expert in this matter, that her opinions are reliable, and that her affidavit and declaration do not amount to impermissible legal conclusions.

Further, even if the Court were to consider Ms. Estrada's opinion, the Court finds the legal assertions contained her affidavit and declaration to be unfounded, unpersuasive and immaterial to the resolution of the matters before the Court.

---

[12] For example, in her Declaration, Ms. Estrada relies on a fact that Deutsche Bank as Trustee does not have a certificate of authority to transact business in South Carolina; however, the South Carolina Code provides a clear exception to this requirement to parties for "creating or acquiring any indebtedness, mortgages and securities interests in real or personal property" and "securing or collecting debts or enforcing mortgages, securities interests, or other rights in property securing debts . . . ." S.C. Code Ann. § 33-15-102(b)(7) & (8) (2020).

Also, in her affidavit, Ms. Estrada relies on a fact that SLS has been informed that it should not bring foreclosure actions naming Deutsche Bank National Trust Company, individually, as the plaintiff. However, in the present matter, SLS is acting as servicer for Deutsche Bank National Trust Company in a representative capacity as a trustee.

*Securitization of the Mortgage Loan*

Plaintiff, through Ms. Estrada, asserts that because the Note and Mortgage were securitized,[13] they are no longer collectable and that the Note is no longer subject to Article 3 of the South Carolina Commercial Code. Instead, Plaintiff asserts that the Note is subject to Article 8 of the Code.

The Court first observes that Plaintiff has cited no case law or statute in support of this position that, upon the securitization of the Mortgage loan, the Note and Mortgage were effectively nullified/paid or that Article 3 is not applicable to this matter.

On the other hand, courts, including those applying South Carolina law, have routinely rejected the argument that a loan is no longer collectable or otherwise "paid" upon being securitized. *See, e.g., Wright v. Bank of America, N.A.*, 2014 WL 3565822 (D.S.C. July 18, 2014) ("Federal courts have also consistently rejected [Plaintiff's] argument that securitization nullified his loan."); *Porterfield v. JP Morgan Chase Bank, Nat'l Ass'n*, 2013 WL 5755499 (E.D.N.C. Oct. 23, 2013) (rejecting the plaintiff's argument that upon securitization, the note "became stock which means it is no longer a loan and is thus extinguished"); *Batchelor v. Wells Fargo Bank, N.A.*, 2013 WL 1499583 at *3 (E.D. Mich. Mar. 15, 2013) ("Plaintiff's argument—that Defendant's securitization of his loan relieved him of his obligation to pay on the note—has been consistently rejected . . . nationwide.").

"Securitization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations" under the note and does not change the relationship of the parties in any way . . . ." *Reyes v. GMAC Mortg. LLC*, 2011 WL 1322775 (D. Nev. April 5, 2011) (internal quotations

---

[13] The Fourth Circuit has described mortgage securitizations as "numerous mortgages [that] are grouped together into a special purpose vehicle, such as a trust. The vehicle then issues mortgage-backed securities to investors." *Scheider*, 572 F. App'x at 188 n. 2.

15

omitted); *see also Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229 at *5 (W.D. Wash. Dec. 16, 2011) (same); *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.*, No. 2:10-CV-375, 2010 WL 4788209, at *2 (D. Utah Nov. 16, 2010), *aff'd sub nom. Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194 (10th Cir. 2011) ("Any new contract that is the result of securitization does not free [Plaintiffs'] from the express terms of [the] Deed of Trust . . . ."); *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F.Supp. 2d 636, 641 (E.D. Va. 2010) (finding "federal law explicitly allows for the creation of mortgage-related securities" and that "[f]oreclosures are routinely and justifiably conducted by trustees of securitized mortgages").

Further, South Carolina state courts have routinely applied Article 3 of the South Carolina Commercial Code to foreclosure actions brought by the trustee of a securitized mortgage loan. *See, e.g., HSBC Bank of USA, Nat'l Ass'n, as Trustee for the Holders of the Deutsche Alt-A Secs., Inc. Mortg. Loan Trust, Mortg. Pass-Through Certificates Series 2007-A4 v. Ryba*, 2019 WL 1551671 (S.C. Ct. App. Apr. 10, 2019) (applying Article 3 in the context of the foreclosure of a securitized mortgage); *Bank of N.Y. Mellon as Trustee for the Benefit of Certificateholders of Popular ABS, Inc. Mortg. Pass-Through Certificates Series 2006-E v. Taylor*, 2018 WL 21295-8 (S.C. Ct. App. May 9, 2018) (same); *U.S. Bank Nat'l Ass'n as Trustee under the Pooling and Service Agreement with Pooling ID# 0040323 and Distribution Series 2006-EMX3 v. Johnson*, 2012 WL 10864163 (S.C. Ct. App. Nov. 14, 2012) (same). In addition, the Fourth Circuit Court of Appeals, applying South Carolina law, upheld a U.S. District Court's finding that, under Article 3, the trustee of a securitized mortgage was the holder of the note and mortgage and entitled to enforce the loan. *Scheider*, 572 F. App'x at 189–90.

For these reasons, the Court overrules the arguments of Plaintiff, as expressed in Ms. Estrada's affidavit, that under South Carolina law, the securitization of the mortgage loan nullifies a party's obligation under a note and removes the note from the requirements of Article 3 of the South Carolina Commercial Code.

*Ownership of the Note and Mortgage*

Plaintiff also makes a number of arguments regarding the ownership of the Note and Mortgage, including that Deutsche Bank has not proven its ownership of the loan. Further, Ms. Estrada asserts in her affidavit that IndyMac ABS, Inc. is the owner of the Note.

This Court has recently held that "a debtor has the right to challenge whether the creditor filing a proof of claim is the holder of the note," but that a debtor does not have standing to challenge the ownership of the note because ownership does not control who may enforce the note under the South Carolina Commercial Code or who may file the proof of claim in a bankruptcy case. *In re Fields*, C/A No. 18-06502-JW at p. 16 (Bankr. D.S.C. Aug. 8, 2019) (quoting *In re Simmerman*, 463 B.R. 47, 60 (Bankr. S.D. Ohio 2011)). As previously discussed, under the South Carolina Commercial Code, the holder of a bearer instrument, such as the Note in this matter, does not need to be the owner of the instrument in order to enforce it and be entitled to a right to payment. Further, under South Carolina law, the mortgage follows the note. Arguments and opinions regarding ownership are not material to the present matter. For these reasons, Plaintiff's arguments regarding the ownership of the Note and Mortgage are not relevant to the determination of whether SLS is entitled to a right of payment under South Carolina law and are overruled.

*Alleged Issues of Authority*

Plaintiff, through Ms. Estrada's affidavit, has also made several allegations regarding the authority of Deutsche Bank as Trustee and SLS to commence collection actions, including a foreclosure action. Such allegations include that Deutsche Bank as Trustee does not have authority under "Trust Fund regulations" to execute a power of attorney to SLS to collect on its behalf and that Deutsche Bank as Trustee has no control over SLS's collection efforts.[14] However, these arguments related to authority do not dispute the fact that SLS is the holder of the Note and acting as the servicer for Deutsche Bank as Trustee, the key facts to determine who has a right to payment under South Carolina law.

---

[14] On this subject, Ms. Estrada relies upon communication with Reynaldo Reyes, a Vice President of Deutsche Bank National Trust Company. Ms. Estrada's affidavit states: "As written the [sic] previous memos (see attached) [sic] [Mr. Reyes] said that Deutsche Bank National Trust Company (in any capacity) is not really suing the Defendants [sic], which has been apparently brought and prosecuted purely at the direction of SLS without authorization from Deutsche Bank National Trust Company." However, Mr. Reyes' purported statements appear to be clarified by the internal memoranda of Deutsche Bank as Trustee that Ms. Estrada included with her affidavit. These memoranda clearly indicate an expectation of Deutsche Bank as Trustee that servicers are to commence foreclosure and collections actions for the subject loans. For example, the memoranda state:

- "The pooling and servicing agreements or other governing documents for the Trusts (collectively, the 'Governing Documents') provide that the Servicer is solely responsible for the performance of all loan-level remedial collection activity on behalf of the beneficiaries of the Trusts, including without limitation, all foreclosure activity and all maintenance and sales of resulting REO properties. The Governing Documents typically require the Trustee to furnish the Servicer with powers of attorney that allow the Servicer to sign documents and institute legal actions, including foreclosure proceedings, in the name of the Trustee on behalf of the Trusts in connection with these servicing activities. The Governing Documents also provide that the Trustee shall not be responsible for the acts or omissions of the Servicer, including acts or omissions relating to the use or misuse of such powers of attorney."
- "Servicers act for the benefit of the Trusts, and in the name of the Trustee, but are not themselves the Trustee."
- "In no event should servicer-retained foreclosure professionals, including counsel, mislead third parties, including courts, into believing that the Trustee directly controls the foreclosure process or any related litigation process."

Further, these alleged statements of Mr. Reyes do not dispute the material facts that SLS is the servicer for Plaintiff's loan or that SLS is the holder of the Note and Mortgage, and therefore, is a creditor of Plaintiff and lienholder on Plaintiff's Residence.

Further, these theories are again bare legal conclusions without any case law or statutory support and appear to relate to agreements between SLS and Deutsch Bank as Trustee. In that regard, it has been held that a non-party cannot collaterally attack the validity or alleged deficiencies regarding these types of agreements. *See, e.g., Scheider v. Deutsche Bank National Trust Company*, C/A No. 9:11-395-SB, slip op. 2013 WL 12106925 D.S.C. Apr. 11, 2013) aff'd 572 F. App'x 185 (4th Cir. 2014) ("[T]he Court agrees with the Defendants that the Plaintiffs lack standing to question the validity of the assignment of the note based on alleged violations of the [pooling and servicing agreement] PSA . . . ."); *Kain v. Bank of New York Mellon, f/k/a Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates Series 2005-16 (In re Kain)*, C/A No. 08-08404-HB, Adv. Pro. No. 10-80047-HB, slip op. 2012 WL 1098465 (Bankr. D.S.C. Mar. 30, 2012) aff'd C/A No. 7:12-cv-02031-JMC, slip op. 2013 WL 1115597 (D.S.C. Mar. 18, 2013) ([T]his Court is swayed by the recent authority finding that debtor, who are not parties to or third party beneficiaries of a PSA, lack standing to challenge the validity of or noncompliance with terms of a PSA.").

Therefore, for the foregoing reasons, the Court finds Plaintiff's arguments do not support summary judgment for Plaintiff and that, as a matter of law, summary judgment should be granted in favor of SLS in this matter.[15]

---

[15] By stipulation of the parties, the resolution of this adversary proceeding will control the determination of the objection to claim and objection to confirmation which are pending in the Main Bankruptcy Case. In regard to Plaintiff's objection to the claim of Deutsche Bank as Trustee filed by SLS, she does not dispute that the proof of claim was filed in compliance with Fed. R. Bankr. P. 3001, and therefore, pursuant to Fed. R. Bankr. P. 3001(f), the claim has *prima facie* evidence of validity and amount. For the same reasons stated herein, the Court further finds that Plaintiff has not overcome its burden to rebut the *prima facie* evidence of the claim. Separate orders on the objection to claim and objection to confirmation will be entered in relation to the continued hearing on those matters, scheduled for March 26, 2020 at 9:00 AM in Columbia, South Carolina.

## **CONCLUSION**

For the foregoing reasons, the Court finds, based on the undisputed facts that Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B is a creditor of Janet Louise Nelums and the holder of the Note and the Mortgage that secures her Residence, and therefore, Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B is entitled to summary judgment in this declaratory judgment proceeding as a matter of law. Based thereon, the Court denies Janet Louise Nelums' motion for summary judgment and grants the motion for summary judgment filed by Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
March 17, 2020

**FILED BY THE COURT**
**03/17/2020**



Entered: 03/17/2020

*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina